UNITED STATES FIDELITY &
GUARANTY COMPANY,
Plaintiff-Appellant,

v.

TRUCK AIR, INC., Laurice Daniel
Cook, Frank Benson Burns and
Mary Burns, Defendants-Appellees.

No. 84–8732
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 29, 1985.

Ben Kingree, Atlanta, Ga., for plaintiff-appellant.

Frank J. Beltran, William H. Buckley, Atlanta, Ga., for Burns.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

Frank Benson and Mary Burns filed complaints against Truck Air, Inc. (Truck Air) and Laurice Cook alleging damages arising out of an automobile collision that occurred on December 19, 1979, when Mr. Cook was operating a Truck Air van while acting within the course of his employment. Mr. Cook and Truck Air called upon United States Fidelity and Guaranty Co. (USF&G) to provide their defense. As a result, USF&G brought this action seeking a declaration that Laurice Cook and Truck Air were not covered under one of its insurance policies. The district court found "that USF&G's policy TP–15492 was still in effect at the time of the accident in question because USF&G did not comply with the notice requirements relating to the cancellation of insurance policies." *United States Fidelity & Guaranty Co. v. Truck Air, Inc., et al.*, No. C82–1100A, slip op. at 1 (N.D.Ga. Aug. 2, 1984) [hereinafter cited as *Dist.Ct.Op.*]. A review of some of the facts is necessary.

Cape Air Freight, Inc. (Cape) was engaged in the business of the transport of cargo by airplane pursuant to regulations under the Civil Aeronautics Board (C.A.B.). During the early 1980's the C.A.B. ceased having jurisdiction over air freight carriers because of deregulation. In the course of Cape's business, which involved transporting cargo between a number of cities in the east and southeast, it engaged the services of ground transport carriers to obtain and deliver freight to Cape's customers. One

of those ground transportation companies was Truck Air which serviced Cape's customers in the Birmingham, Alabama area.[1] Cape's ground transportation carriers operated under the certificate of authority issued by the C.A.B. Cape obtained and paid for a motor vehicle liability insurance policy from USF&G. Truck Air was one of the named insureds under the policy.

We are uncertain from the facts whether Truck Air was furnished with a copy of the USF&G policy or was merely furnished with a certificate of insurance. We do not deem this omission of evidence relevant to our decision in the case. The policies in the record clearly show that Truck Air was the named insured. In the definition section of the policy, Part I, A. reads: " 'You' and 'your' mean the person or organization shown as the named insured in ITEM ONE of the declarations." While Cape Air Freight, Inc. is named as the named insured in Item One, there is attached to the declaration sheet a list of named insureds which names the various ground freight carriers used by Cape, including Truck Air. While appellant makes reference to Truck Air as an "additional insured" in various places in its brief, we cannot read the policy but one way, and that is that Truck Air is a named insured because it is so designated in the policy. In Part VII of the policy appears the following:

D. CANCELLING THIS POLICY DURING THE POLICY PERIOD.

1. You may cancel the policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. We may cancel the policy by mailing you at least 30 days notice at your last address known by us. We may deliver any notice instead of mailing it. Proof of mailing of any notice will be sufficient proof of notice.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

....

On December 17, 1979, Truck Air, by its own initiative, terminated its authorization to operate under Cape. Earnest, *Deposition* at 40–41. After December 17, 1979, Truck Air did not handle any freight for Cape and probably did not have any of Cape's freight in its distribution system. *Id.* at 53. On December 18, 1979 two documents were mailed by Reed Shaw Stenhouse, Inc., Cape's insurance agent. The first was addressed to Clyde Earnest, an officer and agent of Truck Air. It provided:

Since, your [sic] are no longer affiliated with Cape Air Freight all insurance coverage under that contract has ceased.

Also, The Insurance written for Truck Air, Inc., Birmingham Air Cargo & Blue Sky Freight Delivery no longer applies. As this was written in connection with The Cape Account.

Earnest, *Exhibit* 4. In his deposition, Mr. Earnest stated that he was sure he received the documents although he did not remember them specifically. Earnest, *Deposition* at 43. He also stated it was not his understanding that the insurance coverage terminated when Truck Air's authority under Cape was terminated. *Id.* at 41.

The second document, was directed to certificate holders and provided:

THIS IS TO ADVISE YOU THAT THE CERTIFICATE OF INSURANCE ISSUED FOR THE ABOVE (copy attached) IS VOID.

THEY NO LONGER ARE AFFILIATED WITH CAPE AIR FREIGHT, THEREFORE, ALL INSURANCE CEASED.

Ms. Barmore, who is a USF&G supervising auditor, stated that the original policy issued to Cape for the period of 1977–78 contained the following limiting endorsement:

1. In 1979, Truck Air consisted of two corporations operating under the name of Truck Air, Inc. and Truck Air of Georgia, Inc. After the period in question, Truck Air became a single consolidated company.

Coverage applies only while the Named Insured is operating under authority of filings which have been filed under the name of: Cape Air Freight, Inc.....

Barmore, *Exhibit* 1. This initial policy was amended on April 19, 1977 and on May 1, 1977. The limiting endorsement was deleted by an April endorsement because Frank Wolf, who was Cape's agent, indicated that it was not satisfactory.[2] Wolf, *Deposition* at 13; *see also* Wolf, *Exhibit* 3. However, a similar endorsement was added to the policy by the May amendment. *See* Barmore, *Exhibits* 3–4; Barmore, *Deposition* at 8–9. In 1978, the policy was amended to extend the expiration date to 1979.

The 1979–80 policy, which was the next policy issued, is the subject of this suit. Ms. Barmore stated that the limiting endorsement was not contained in the 1979–80 policy because of a typist's error. The handwritten draft prepared by Ms. Barmore contained a limiting endorsement that was identical to the endorsement in the 1977–78 policy.[3] Ms. Barmore also stated that the purpose of the limiting endorsement "was to provide coverage only for these additional insureds while they were operating under Cape Air Freight's filings only." Barmore, *Deposition* at 16–17. Frank Wolf, made a similar comment. It was his and Cape's understanding that the policy terminated when Truck Air's relationship with Cape terminated. Wolf, *Deposition* at 17–18.

Cape's policy remained in effect during the period in which Truck Air was notified that it was no longer insured. The policy was renewed for the period of April 1, 1980 through April 1, 1981.

## I  DISCUSSION

The district court viewed USF&G's actions as a cancellation of an insurance policy and applied Ga.Code Ann. § 56–2430 (1977). Because the court found that USF&G did not provide Truck Air with adequate notice that the policy was cancelled, the court did not address the reformation issues. The district court also stated:

[A] Georgia court would not extend its narrow exception to the general statutory requirements of notice before cancellation to the facts in the present case.... [N]o Georgia court has ever absolved an insurance company of its duties under Ga.Code Ann. § 56–2430 unless there was a failure to pay premiums or a failure to renew the policy.

*Dist.Ct.Op.* at 6.

Appellant USF&G makes two contentions in its appeal. It urges that the district court should have reached the reformation issue and reformed the policy so that it would include the limiting endorsement. Secondly, USF&G argues that with the reformed policy containing the limiting endorsement, the policy was not one which required cancellation by USF&G, but instead that the coverage afforded to Truck Air lapsed immediately upon Truck Air's termination of its contractual relationship with Cape. The best statement of the position taken by USF&G is that by Professor Couch as follows:

The duration of risk is to be distinguished from cancellation. For example, provisions relating to cancellation of insurance have no relation to termination of the policy by the expiration of the period specified for the duration of the risk.

When by the terms of the policy all coverage, or certain coverage, terminates upon the occurrence of a specified event, the termination of coverage is not a matter of cancellation but is merely a question of the duration of the risk provided by the policy.

---

**2.** Wolf stated the limiting endorsement was unsatisfactory because it placed restrictions on the use of the vehicles. Wolf, *Deposition* at 14. However, his concern regarding the limiting endorsement did not relate to coverage for additional insureds that left or terminated their relationship with Cape. *Id.* at 18–19.

**3.** The limiting endorsement provided: "Coverage applies only while the Named Insured is operating under authority of filings which have been made under the name of: Cape Air Freight, Inc.,...." *Dist.Ct.Op.* at 4.

17 G. Couch, R. Anderson & M. Rhodes, *Couch on Insurance 2d* § 67:28 at 482 (1983). Mr. Appleman also points out that "[t]he inception and duration of risk ordinarily depends on the *agreement* of the parties...." 7 J. Appleman, Insurance Law and Practice § 4262 at 46 (1972).

We agree with the district court's holding that the policy afforded coverage to Truck Air. While USF&G recites to us some good legal authority, its facts do not match its legal argument. USF&G does not establish that Truck Air was on any notice through the policy, through a certificate of insurance, or otherwise of any limiting endorsement which automatically terminated the insurance coverage the very moment that Truck Air was no longer carrying freight for Cape.

To the contrary, when Mr. Earnest, Chief Executive Officer of Truck Air, was asked about coverage under the policy he stated:

A   We were under that policy. However, it also covered Truck Air, Inc., Blue Sky, and Birmingham Air Cargo.

Q   It covered what, now?

A   It covered all of our activities, but we reported separately and paid a percentage to Reed Shaw Stenhouse.

Q   And, again, without getting involved with any legal questions, but is it your understanding that when your authority with Cape Air Freight terminated, your coverage under that policy terminated—that U.S.F. & G. policy?

A   No.

Q   Was there more than one insurance policy involved here?

A   I'm not sure, there.

Earnest, *Deposition* at 41–42.

USF&G is a victim of its own inadequate policy language. While clearly its policy shows Truck Air as a named insured with an entitlement to a 30 day cancellation notice, its limiting endorsement (assuming reformation) is nowhere shown to have been furnished to Mr. Earnest, and even if it had been, it obviously conflicts with the cancellation and notice provisions. USF&G's arguments evaporate in view of the conflicting terms in its policy. The district court's judgment is

AFFIRMED.